**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MOHAMED SALAH,

Petitioner,

v.

ERNESTO SANTACRUZ JR., *et al.*,

Respondents.

Case No. 5:26-cv-04600-ACCV

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On August 13, 2026, Petitioner Mohamed Salah ("Petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. 1 at 25–41.) For the reasons stated herein, the Court denies the Petition.

## II. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Cuba, who arrived in the United States in 2001. (Dkt. 1 at 9; Dkt. 1-2 at 17.)

On February 25, 2008, Petitioner was granted lawful permanent residence status. (Dkt. 1 at 14.) Petitioner worked as a manager at an auto dealership for seventeen years. (*Id.*) Petitioner lived in Mission Viejo, California, for sixteen years with his

wife and two children. (*Id*. at 15-16.) On January 26, 2018, Petitioner's Application for Naturalization was denied. (Dkt. 10-1 at 13.)

On December 19, 2022, Petitioner was convicted for Conspiracy to Commit Bank Fraud and Wire Fraud and sentenced to 27 months imprisonment and ordered to pay $7,484,163.00 in restitution. (Dkt. 10-1 at 13.)

On September 25, 2025, Petitioner was released from federal custody and transferred to immigration custody the same day. (Dkt. 1 at 19.) Petitioner has been detained at Adelanto ICE Processing Center from that date. (*Id.*)

On March 30, 2026, a bond hearing was held. (Dkt. 1 at 20.) The Immigration Judge ("IJ") denied Petitioner's request for a custody redetermination and found:

> Pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), the Court finds DHS met their burden by clear and convincing evidence that Respondent is a danger to the community (property). DHS filed evidence that Respondent was convicted, by a jury, of Bank Fraud and ordered to pay restitution of $7.4 million. Respondent presented evidence that the main witness to his conviction has recanted and his criminal defense lawyer is seeking to over-turn the conviction.
>
> The Court finds that Respondent presents a danger to property and should not be released during the pendency of removal proceedings. *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994)[.]

(Dkt. 10-1 at 5.)

On July 28, 2026, Petitioner filed a motion for custody redetermination. (Dkt. 10-1 at 8.) This motion was denied without a hearing as the IJ found there was an absence of materially changed circumstances necessitating reconsideration of the prior bond determination. (*Id.*)

In the Petition, Petitioner argues his continued detention is unlawful based on: (1) Violation of the Due Process Clause of the Fifth Amendment — the IJ recited the clear-and-convincing standard but did not apply it and treated the conviction documents

as self-executing, placing the burden of persuasion on Petitioner, and made no finding of present dangerousness; (2) Violation of the Due Process Clause of the Fifth Amendment — in the alternative, the denial of bond was an abuse of discretion; and (3) Violation of the Due Process Clause of the Fifth Amendment — prolonged mandatory detention without a constitutionally adequate hearing. (Dkt. 1 at 24–41.) Petitioner requests as relief, *inter alia*, his immediate release or in the alternative another bond hearing. (*Id.* at 42.)

Respondents claim Petitioner's claims are moot. (Dkt. 10 at 2.) They argue the IJ's March 30, 2026 and July 28, 2026 orders dispose of Petitioner's claims. (*Id.*) Respondents contend: (1) Petitioner has failed to exhaust administrative remedies and may appeal to the BIA; and (2) Petitioner has not identified any due process violation or error of law that justifies habeas relief. (*Id.* at 3–6.)

Petitioner filed a reply on August 25, 2026. (Dkt. 13.) In the reply, Petitioner largely reiterates his arguments in the Petition. (*See id.*)

## III. LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

Petitioner claims that his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Dkt. 1 at 25–41.) For the reasons below, the Court disagrees.

///

Petitioner had custody redetermination proceedings on March 30, 2026, and July 28, 2026. An immigration detainee who loses a bond hearing has a direct administrative remedy: appeal to the BIA. *See* 8 C.F.R. §§ 1003.1(b), 1003.19(f), 1003.38. The BIA reviews de novo all "questions of law, discretion, and judgment" from the decisions of immigration judges. 8 C.F.R. § 1003.1(d)(3)(ii). It also reviews for clear error any findings of fact, "including findings as to the credibility of testimony." *Id.* § 1003.1(d)(3)(i); *see Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013). As a result, the Ninth Circuit has held that the detainee must first "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Every principal published Ninth Circuit decision on this subject has usually involved review of a final BIA decision—not an immigration judge's order standing alone. *See*, *e.g.*, *Martinez v. Clark* (*Martinez II*), 124 F.4th 775, 785–86 (9th Cir. 2024). Additionally, even when exhaustion is later excused (for reasons to be discussed below), the petitioner has still at least appealed to the BIA. *See*, *e.g.*, *Singh v. Holder*, 638 F.3d 1196, 1200–01 (9th Cir. 2011). These cases thus recognize that direct review of immigration detention decisions belongs with the BIA in the first instance—not federal habeas courts.

The three structural reasons that the Ninth Circuit relies on to enforce administrative exhaustion are present here as well. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). First, the BIA has subject-matter expertise in reviewing bond determinations, *see* 8 C.F.R. § 1003.1(b)(7)—expertise particularly valuable here given petitioner's central complaint regarding the IJ's findings. (Dkt. 1 at 20–34.) BIA review would help elucidate the bond determination's rationale and help explain the decision and whether that explanation is adequate. Second, if Petitioner could skip the BIA to challenge the IJ's findings, then every noncitizen denied bond on a similar basis has a shortcut to federal court. Those who most need appellate review— because the initial decision was too cursory—would be the ones who skip it. That inverts the

administrative remedy scheme and is precisely the "improper shortcut" that the Ninth Circuit prohibits. *Leonardo*, 646 F.3d at 1160. After all, the immigration judge's order is not the agency's final word. It is the first step in a process designed to produce a reasoned decision at the administrative appellate level. Only then would the administrative record be complete and only then would a federal court have the considered agency decision that federal courts can review— especially considering that it is limited even more by jurisdictional limits in 8 U.S.C. § 1226(e). *See generally Martinez II*, 124 F.4th at 785–86.

Third, the BIA can correct the very deficiency petitioner identifies. *See*, *e.g.*, *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7. 2019) ("[T]he BIA is capable of . . . determining whether the government has carried its burden of demonstrating by clear and convincing evidence that [petitioner] is a current danger [or flight risk] and must be detained.") (citing *Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007)). If the IJ's order reflects an abuse of discretion, then the BIA has authority to remand for a new hearing with instructions to issue a reasoned decision, rendering federal-court intervention unnecessary. In the alternative, the BIA may conclude that the IJ's memorandum—once produced—adequately explains the decision, closing the administrative circuit with a final agency action that a federal court can review provided it has jurisdiction under § 1226(e).

To be clear, exhaustion in immigration habeas cases is prudential—not jurisdictional. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Still, federal courts excuse it only where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Those exceptions are necessarily narrow, and the Ninth Circuit has applied them only where the detainee's challenge is essentially to the legal framework itself, not to how a particular immigration judge applied that framework in a particular case.

In *Singh*, for instance, the court bypassed exhaustion on what standard of proof the Constitution requires at prolonged-detention hearings for those mandatorily detained. 638 F.3d at 1205 & n.3. The court explained that this was a "purely legal" issue for which "an administrative record is not germane," that waiving exhaustion would not encourage deliberate bypass because the legal question—once resolved—would not recur, and that the BIA could not obviate the need for a federal ruling. *Id.* The court also emphasized that Singh had been detained for nearly four years. *See id.* Similarly, in *Hernandez*, the court waived exhaustion for a class-wide challenge to the bond framework—specifically, whether immigration judges must consider ability to pay and alternatives to detention. 872 F.3d at 988–89. There again, the claims were "purely legal," the BIA's position was fixed through its own precedents, and the challenge raised a discrete systemic question that would not recur once resolved. *Id.*

Petitioner's claims resemble neither of those cases. Petitioner challenges how a singular IJ applied the clear-and-convincing standard to his case and the IJ's findings. That is a case-specific claim about the adequacy of one decision in one proceeding—exactly the kind of claim the BIA was designed to review. The BIA has not adopted any position foreclosing relief on such a claim. And petitioner's detention does not approach the extended duration that supported Singh's excusal.

That is not to imply that continued detention is trivial or cost-free as it is not. However, every noncitizen denied bond by an immigration judge is detained during the pendency of an appeal. That is intrinsic not only to appellate review but inherent in the system Congress designed. Accordingly, if the ordinary delay of administrative review—and its corresponding extension of a petitioner's detention—constituted "irreparable injury" sufficient to excuse exhaustion, then it would be excused in every bond denial. *Leonardo*'s default rule would be rendered void. *See*, *e.g.*, *Yu v. Noem*, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026) ("[E]xcusing exhaustion on that basis would cause the exception to swallow the rule."). While the time needed to complete a BIA appeal may tip against enforcement of exhaustion in some cases with

compelling facts, it is not enough on its own in the litany of immigration detentions. *See McCarthy v. Madigan*, 503 U.S. 140, 147–49 (1992); *Leonardo*, 646 F.3d at 1160. That is the result in this case and Petitioner has not exhausted his administrative remedies by way of a BIA appeal. Having disposed of this case on non-exhaustion grounds the Court need not reach Petitioner's other claims.

## V. CONCLUSION

For the reasons stated, the COURT DENIES the Petition.

DATED: October 6, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge